UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**RAVEON WARD ET AL**               **CASE NO. 3:24-CV-01509**

**VERSUS**                          **JUDGE TERRY A. DOUGHTY**

**STATE FARM FIRE & CASUALTY CO**   **MAG. JUDGE KAYLA D. MCCLUSKY**

## MEMORANDUM RULING

Pending before the Court are Motions for Summary Judgment [Doc. Nos. 18; 19; 20][1] filed by Defendant, State Farm Fire and Casualty Co. ("State Farm"), regarding Plaintiff Raveon Ward's ("Ward") capacity to sue. Ward did not file a response to any Motion.

For the reasons stated below, State Farm's Motions are **GRANTED**.

### I. Background

Ward owned the E&T Grill and Restaurant LLC ("E&T") in Junction City, Louisiana.[2] E&T is a limited liability company ("LLC").[3] Ward is listed as E&T's sole member and manager.[4] State Farm insured E&T through Policy 94-AA-A606-0 (the "Policy").[5] On June 1, 2024, E&T caught fire (the "Fire") and was damaged.[6] Three days later, Ward filed a claim with State Farm.[7] State Farm allegedly paid Ward

---

[1] The Motions in Doc. Nos. 19 & 20 address, more in-depth, the bad-faith and personal economic loss claims.
[2] [Doc. No. 1, at p. 4].
[3] [Doc. No. 18-4, at p. 1].
[4] [Doc. No. 1, at p. 4].
[5] [Doc. No. 1-2, at ¶ 4]; [Doc. No. 18-3, at p. 2].
[6] [Doc. No. 1-2, at ¶ 3].
[7] [Id. at ¶ 6].

$800–$900.[8] Ward sued State Farm for damages, arguing State Farm (1) failed to honor E&T's claim, (2) refused to pay in an arbitrary and capricious manner, and (3) acted in bad faith.[9] State Farm removed the case to this Court, citing diversity jurisdiction.[10] Notably, at the time of the Fire, the Louisiana Secretary of State revoked E&T's articles of organization because E&T did not comply with Louisiana's annual LLC reporting requirements.[11]

The issues in this Motion are whether (1) Ward has the capacity to sue on behalf of E&T, (2) E&T has capacity to sue, (3) Ward may sue for personal economic loss based on the Policy, and (4) Ward may sue for bad faith based on the Policy. The parties have briefed all relevant issues, and the matter is ripe for ruling.

## II.   Law and Analysis

### A.   Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in

---

[8] [Id. at ¶ 8]; [Doc. No. 9, at ¶ 8].
[9] [Doc. No. 1-2, at ¶¶ 15–17].
[10] [Doc. No. 1].
[11] [Doc. No. 18-4, at p. 1].

the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249 (1986) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

When district courts face unopposed summary judgment motions, the Fifth Circuit provides additional guidance. Importantly, a "motion for summary judgment cannot be granted simply because" it is unopposed. *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435 (5th Cir. 2014) (mem) (quoting *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir.1985)). But a Court may grant the motion "if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Id.*

Thus, the movant must still establish "that there is no genuine issue of material fact; and, unless that party does so, a court may not grant the motion, regardless [of] whether any response is filed." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 550 (5th Cir. 2012). "Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment." *Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015) (collecting cases).

Courts also have no obligation to "sift through the record in search of evidence" that supports the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Finally, while courts "need consider only the cited materials," they may also "consider other materials in the record." FED. R. CIV. P. 56(c)(3).

Since this is a diversity case, the forum state, i.e., Louisiana's substantive law generally applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### B. Capacity to Sue

#### 1. Choice of Law

The Federal Rules of Civil Procedure state that capacity is determined:

> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
> (2) for a corporation, by the law under which it was organized; and
> (3) for all other parties, by the law of the state where the court is located[.]

FED. R. CIV. P. 17(b). So if E&T, an LLC, is suing, then Louisiana law applies since E&T is organized under Louisiana law. Alternatively, if Ward is suing on behalf of E&T, Louisiana law still applies because this Court is in Louisiana. Thus, Louisiana law indisputably applies to questions concerning capacity to sue.

#### 2. Ward Suing on Behalf of E&T

Per the state court petition, Ward sues State Farm "on behalf of" E&T.[12] State Farm argues Louisiana law prohibits such representative suits on behalf of an LLC.[13] The Court agrees. Louisiana law is as clear as ice: "members of a limited liability company have no right to sue personally for damages to limited liability company property." *Pocket Billiards and Bar, LLC v. Fast & Affordable College Student Movers, Inc.*, 346 So. 3d 399, 404 (La. Ct. App. 2022); *Am. Rebel Arms, L.L.C. v. New Orleans Hamburger & Seafood Co.*, 186 So. 3d 1220, 1224 (La. Ct. App. 2016); *Zeigler v. Hous. Auth. of New Orleans*, 118 So. 3d 442, 450 (La. Ct. App. 2013). Since Ward,

---

[12] [Doc. No. 1-2, at p. 1].
[13] [Doc. No. 18-2, at pp. 6–7].

E&T's sole member, brings this suit "on behalf of" E&T[14] for damages E&T sustained,[15] Louisiana law bars the suit from proceeding as pled.

As such, Ward does not have the capacity to bring this suit on E&T's behalf.

### 3. E&T Suing on its Own Behalf

State Farm also argues Ward cannot correct the deficient suit because E&T cannot sue on its own behalf since it is a revoked LLC.[16] In support, State Farm cites Louisiana law, providing that:

> *Revocation* of the articles of organization of a limited liability company pursuant to this Section *shall not affect any cause of action against* the limited liability company or the right to proceed against any property owned by the limited liability company. Such *revocation shall also not prohibit a limited liability company from selling property* belonging to the company in the same manner as if the revocation had not occurred.

La. Stat. Ann. § 12:1308.2(G) (2024) (emphasis added).

Neither State Farm nor the Court finds any case construing this recently-enacted law. Thus, this Court must make an "*Erie* guess" as to how Louisiana courts would resolve the issue. *Breaux v. Worrell*, 141 F.4th 712, 716 (5th Cir. 2025). State Farm effectively makes an *expressio unius est exclusio alterius* argument, i.e., when the legislature includes some things and does not add a catchall provision, the legislature intentionally excluded all unlisted things. *See Wederstrandt v. Kol*, 366 So. 3d 47, 52 (La. 2023), *reh'g denied,* 370 So. 3d 457 (La. 2023).

---

[14] [Doc. No. 1-2, at p. 1].
[15] [Id. at ¶ 9].
[16] [Doc. No. 18-2, at pp. 8–9].

The Court agrees. Section 12:1308.2(G) provides two clarifications about the effect of revoked status on LLCs—(1) revocation does not prohibit others from suing an LLC, and (2) revocation does not prohibit an LLC from selling its property. Thus, the inclusion of these two provisions without a catchall at the end suggests that the legislature intentionally excluded and intended to prohibit a revoked LLC from suing.

The Court, however, notes Louisiana law provides that a revoked LLC's articles of organization may be reinstated upon meeting certain conditions within three (3) years of its revocation. La. Stat. Ann. § 12:1308.2(C). E&T's articles of organization were revoked on May 15, 2024.[17] Consequently, E&T's articles could be reinstated if it meets the criteria in Section 12:1308.2(C) by May 2027. Thus, E&T could still bring a suit against State Farm but may not currently do so.

### C.  Ward Suing Under the Policy

The Policy lists E&T as its "named insured," not Ward.[18] And, as State Farm notes, the Policy does not list Ward as an additional insured or an alternative insured either.[19] Furthermore, the Policy provides that:

> a. [State Farm] will pay for the actual "Loss Of Income" *you* sustain due to the necessary "suspension" of *your* "operations" during the "period of restoration". The "suspension" must be caused by accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss.
> . . . .
> b. [State Farm] will only pay for "Loss Of Income" that *you* sustain during the "period of restoration" that occurs after the date of accidental direct physical loss and within the

---

[17] [Doc. No. 18-4, at p. 1].
[18] [Doc. No. 18-3, at p. 4].
[19] [Doc. No. 18-2, at p. 7].

number of consecutive months for Loss Of Income And Extra Expense shown in the Declarations.[20]

The Policy's Businessowners Coverage Form states that "you" and "your," throughout the Policy, "refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy."[21]

State Farm argues that, due to the above language, Ward cannot bring claims for personal economic losses.[22] State Farm also alleges that under Arkansas law, Ward may not bring his bad faith claims.[23]

### 1. Choice of Law

Under Louisiana law, "in a case having contacts with other states," courts must apply the "law of the state whose policies would be most seriously impaired if its law were not applied to that issue." LA. CIV. CODE ANN. art. 3515 (2025). In contract cases, courts determine which state's interest is "most seriously impaired" by examining:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties;
> (2) the nature, type, and purpose of the contract; and
> (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

*Id.* art. 3537 (2025).

---

[20] [Doc. No. 18-3, at p. 23 (emphasis added)].
[21] [Id. at p. 51].
[22] [Doc. No. 18-2, at pp. 7–8].
[23] [Id. at p. 8]; [Doc. No. 20-2, at pp. 12–16].

State Farm argues that Arkansas has the most connections to the dispute. First, the application for the Policy stated the location of the insured (E&T) is in Arkansas.[24] Second, State Farm delivered the Policy to an Arkansas mail box.[25] Third, the Policy is an Arkansas contract.[26] E&T was, however, located on the Louisiana side of Junction City,[27] and is an LLC registered in Louisiana.[28]

The holding in *Abraham v. State Farm Mut. Auto. Ins. Co.* is instructive. 465 F.3d 609 (5th Cir. 2006). The plaintiff, who resided in Mississippi, got into a car accident in Baton Rouge, Louisiana. *Id.* at 610. The defendant issued the plaintiff's auto insurance in Mississippi through a Mississippi agent. *Id.* The plaintiff contended Louisiana had a stronger interest because the accident took place in Louisiana, and he was treated there. *Id.* at 612. The defendant argued Mississippi had a stronger interest since the car was registered in Mississippi and the policy, which was issued in Mississippi, is a Mississippi contract. *Id.* The Fifth Circuit held that Mississippi's "policy interest in upholding the justified expectations of parties to Mississippi insurance contracts" was more significant than "Louisiana's policy interest in tort victims recovering damages" since Mississippi law also provided an avenue for the plaintiff to recover said damages. *See id.* at 613–14.

Under *Abraham*, Arkansas' interest appears stronger here. True, the fire occurred in Louisiana and affected a Louisiana entity. But the Policy is an Arkansas

---

[24] [Doc. No. 20-2, at p. 13].
[25] [Id.].
[26] [Id.].
[27] [Doc. No. 1, at p. 4].
[28] [Doc. No. 18-4, at p. 1].

contract, negotiated and delivered in Arkansas. Thus, Arkansas has a "policy interest in upholding the justified expectations of parties" to Arkansas insurance contracts. *Id.* at 614. Louisiana also has a policy interest in ensuring Louisiana insureds receive their dues under insurance contracts. But Arkansas' interest is stronger and does not thwart Louisiana's interests as Arkansas insureds may bring claims for bad-faith and economic loss. Therefore, Arkansas law governs regarding the Policy.

### 2. Personal Economic Loss Claim

Ward's state court petition shows that Ward sued State Farm to recover, under the Policy, $70,000 for Ward's loss of income.[29] Under Arkansas law, insurance policies are construed "according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy." ARK. CODE ANN. § 23-79-119 (2019). A policy's "clear and unambiguous" language controls; and "absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms." *See Smith v. Shelter Mut. Ins. Co.*, 937 S.W.2d 180, 181 (Ark. 1997).

Here, the Policy's text is unambiguous. The words "you" and "your" in the provision regarding loss of income refer to the named insured.[30] Thus, State Farm's obligation is to pay for the loss of income to E&T,[31] the sole insured under the Policy.[32] As such, Ward may not bring his suit as it involves claims for personal loss of income arising from the Fire.

---

[29] [Doc. No. 1-2, at ¶ 13].
[30] [Doc. No. 18-3, at p. 51].
[31] [Id. at p. 23].
[32] [Id. at p. 4].

### 3. Bad-faith Claim

Ward's state court petition states that he sued State Farm because it acted in bad-faith by not compensating his losses.[33] State Farm argues Ward cannot bring the bad-faith claim because under Arkansas law, only the insured, i.e., E&T may bring bad-faith claims.[34]

Arkansas law authorizes and foresees assignment of insurance claims. An insurer is "liable to pay the holder of the policy *or his or her assigns*." ARK. CODE ANN. § 23-79-208 (2007) (emphasis added). An insurance company commits the tort of bad faith, under Arkansas law, when it "affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation *to its insured*." *4 Star Gen. Contracting, Inc. v. United Fire & Cas. Co.*, No. 2:22-CV-02036, 2022 WL 2980699, at *2 (W.D. Ark. July 27, 2022) (quoting *State Auto Prop. & Cas. Ins. Co. v. Swaim*, 991 S.W.2d 555, 559 (Ark. 1999) (emphasis added)). Relying on the above language, the *4 Star* court made an "*Erie* guess" that "under Arkansas law, a claim for the tort of bad faith may only be brought by the insured." *Id.*

As described above, here, Ward is not the insured under the Policy.[35] The sole insured under the Policy is E&T.[36] Ward has not provided, nor does this Court find, any reason to depart from *4 Star*'s holding. Therefore, Ward, who is not the insured under the Policy, may not bring forward his bad-faith claims.

---

[33] [Doc. No. 1-2, at ¶ 17].
[34] [Doc. No. 18-2, at p. 8]; [Doc. No. 20-2, at pp. 14–15].
[35] *See supra*, Part II.D.1.
[36] [Doc. No. 18-3, at p. 4].

To sum, the Court concludes that Ward may not bring his suit (1) as a representative, on behalf of E&T for damages sustained by E&T; (2) for loss of personal income; and (3) for bad faith by State Farm towards Ward. Furthermore, E&T may not currently bring a suit against State Farm but could do so in the future if E&T's articles of organization are reinstated.

### III. Conclusion

For the reasons stated above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that State Farm's Motions for Summary Judgment [Doc. Nos. 18; 19; and 20] are **GRANTED**, and Ward's claims against State Farm are **DISMISSED WITH PREJUDICE.**

MONROE, LOUISIANA, this 12th day of November 2025.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE